IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

CRUTCHFIELD PROPERTIES, LLLP,      )
                                    )
          Plaintiff,                )
                                    )
     v.                             )          Civil Action File
                                    )          No. 4:17-CV-00076-HLM
ASHGAN PRODUCTS LLC, GLOBAL         )
ENVIROTECH, LLC, MOHAWK INDUSTRIES, )
INC., HEALTHIER CHOICE FLOORING, LLC, )
JOHN ASHWORTH, BETTY ASHWORTH,      )
JOHN F. MORGAN, and NATHANIEL       )
BENNETT,                            )
                                    )
          Defendants.               )
                                    )

## FIRST AMENDED COMPLAINT

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure and the

Local Rules of this Court, Plaintiff Crutchfield Properties, LLLP ("Crutchfield

Properties") files this First Amended Complaint against Defendants Ashgan

Products LLC, Global Envirotech, LLC (d/b/a Global Environmental), Mohawk

Industries, Inc., Healthier Choice Flooring, LLC, John Ashworth, Betty Ashworth,

John F. Morgan, and Nathaniel Bennett (hereinafter the "Defendants") as follows:

1.     This is a civil action for recovery from Defendants of environmental

response and cleanup costs and other damages incurred by Plaintiff Crutchfield

Properties relating to a November 14, 2015 fire at the Old Barwick Mill, 207 West Main Street/412 McClemore Street, LaFayette, Georgia. Crutchfield Properties seeks to recover from Defendants pursuant to the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and pursuant to state statutory and common law and breach of contract.

## JURISDICTION & VENUE

2.     Plaintiff Crutchfield Properties is a Georgia limited liability limited partnership with its principal place of business in Dalton, Georgia.

3.     Defendant Ashgan Products LLC ("Ashgan") is a domestic limited liability company with its principal place of business located at 904 West Dug Gap Mountain Road, Dalton, Georgia and can be served via its registered agent, John F. Morgan, 904 West Dug Gap Mountain Road, Dalton, Georgia 30720. This Court has personal jurisdiction over Ashgan because it is a Georgia company with its principal place of business in Georgia.

4.     Defendant Global Envirotech, LLC d/b/a Global Environmental ("Global") is a domestic limited liability company with its principal place of business located at 306 Workman Road, Chattanooga, Tennessee 37410 and can be served via its registered agent, Betty Ashworth, 80 U.S. Grant, Ringgold, Georgia

30736. This Court has personal jurisdiction over Global under Georgia's Long Arm Statute, O.C.G.A. § 9-10-91, because, among other things, Global is a Georgia company and it has transacted in, solicited, and engaged in business within the State of Georgia in the District of this Court and such business is the subject of the claims herein.

5.      Defendant Mohawk Industries, Inc. ("Mohawk") is a Delaware corporation registered to conduct business in the State of Georgia, with its principal place of business located in Calhoun, Georgia and can be served via its registered agent, Corporation Service Company, 40 Technology Pkwy South, #300, Norcross, Georgia 30092.   This Court has personal jurisdiction over Mohawk because, among other things, it has its principal place of business in Georgia and has transacted in, solicited, and engaged in business within the State of Georgia in the District of this Court and such business is the subject of the claims herein.

6.      Defendant Healthier Choice Flooring, LLC ("HCF") is a domestic limited liability company with its principal place of business located at 401 Jones Street, Dalton, Georgia and can be served via its registered agent Craig Poteet, 401 Jones Street, Dalton, Georgia 30720. This Court has personal jurisdiction over

HCF because it is a Georgia company with its principal place of business in Georgia.

7.      John Ashworth is an individual who, upon information and belief, resides at 436 Baker Lane, Whitwell, Tennessee 37397, and he is subject to personal jurisdiction in this Court under Georgia's Long Arm Statute, O.C.G.A. § 9-10-91, because, among other things, he has transacted in, solicited, and engaged in business within the State of Georgia in the District of this Court and such business is the subject of the claims herein.

8.      Betty Ashworth is an individual who, upon information and belief, resides at 436 Baker Lane, Whitwell, Tennessee 37397 and she is subject to personal jurisdiction in this Court under Georgia's Long Arm Statute, O.C.G.A. § 9-10-91, because, among other things, she has transacted in, solicited, and engaged in business within the State of Georgia in the District of this Court and such business is the subject of the claims herein.

9.      John F. Morgan is an individual who, upon information and belief, resides at 904 West Dug Gap Mountain Road, Dalton, Georgia 30720, and he is subject to personal jurisdiction in this Court.

10.     Nathaniel Bennett is an individual who, upon information and belief, resides at 54 Misty Ridge Lane, Ringgold, Georgia 30736, and he is subject to personal jurisdiction in this Court.

11.     This is an action under the federal CERCLA and this Court has jurisdiction over the subject matter of the within and foregoing action pursuant to the provisions of 42 U.S.C. § 9613(b) and 28 U.S.C. § 1331.  In addition, this Court has pendent and ancillary jurisdiction over the claims arising under state law because all of Crutchfield Properties' claims for relief in this Complaint arise out of the same facts and occurrences as the federal claims under CERCLA. 28 U.S.C. § 1367.

12.     Venue properly lies in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 42 U.S.C. § 9613(b).

## FACTS COMMON TO ALL COUNTS

13.     Crutchfield Properties is the owner of the Old Barwick Mill property located at 207 West Main Street/412 McClemore Street, LaFayette, Georgia (the "OBM Property").

14.     The OBM Property is approximately 9.6 acres and contained an approximately 230,000 square foot brick and metal roofed industrial building.

15.     On or about November 15, 2013, Crutchfield Properties leased the southern half of the building at the OBM Property to Ashgandus Products LLC which later changed its name to Ashgan Products LLC.  A true and correct copy of the Lease is attached hereto as Exhibit "A" and is hereinafter referred to as the "OBM Property Lease."

16.     Defendant Global is a sister company to Ashgan because Defendant John Ashworth has an ownership interest in both Ashgan and Global.

17.     Ashgan and Global placed in the building on the OBM Property substances that were utilized in carpet making facilities including but not limited to dyes, precipitated calcium carbonate, liquid latex, synthetic and natural rubber, polyethylene scrap, polypropylene scrap and flake, and polyurethane foam bales. Ashgan and Global's polyethylene scrap at the OBM Property was virtually identical to the polyethylene material which caught fire under I-85 in Atlanta and resulted in the large fire and collapse of I-85.

18.     Ashgan arranged for Global to transport the aforementioned substances to the OBM Property.  Global also owned some of the substances in the building at the OBM Property.

19.     According to submittals by Ashgan and Global to the U.S. Environmental Protection Agency ("EPA"), Global was paid by Defendant

Mohawk to transport and dispose of Mohawk's calcium carbonate and liquid latex at the OBM Property and HCF was the source of the polyurethane foam and polypropylene scrap placed at the OBM Property.

20.     According to Material Safety Data Sheets provided by Ashgan and Global for the substances at the OBM Property, the substances may emit toxic fumes and gases when burned.  Rubber latex contains ammonia and may emit nitrogen oxides, ammonia, and carbon monoxide at high temperatures.  When ignited, polyurethane foam can produce hazardous decomposition products such as carbon monoxide, oxides of nitrogen, acetaldehyde, acrylonitrile, and hydrogen cyanide. Decomposition of calcium carbonate at high temperatures will produce calcium oxide.  In addition, styrene may be emitted from the combustion of polyurethane foam or latex rubber; calcium carbonate frequently contains metals such as arsenic, chromium, and selenium and metals may also be associated with dyes used to color polyethylene foam, polypropylene, polyurethane foam, and latex rubber; and glues or adhesive residues on plastics such as polyethylene and polypropylene are potential source of volatile organic compounds ("VOCs").

21.     On November 14, 2015, a large fire occurred in the southern half of the OBM Property building leased by Ashgan and in which Ashgan and Global

were conducting their operations, including placement of the substances obtained from Mohawk and HCF.

22.    Due to the size of the fire and concerns about the presence of hazardous substances in the portion of the building leased by Ashgan, representatives from the U.S. EPA, the Georgia Environmental Protection Division ("Georgia EPD"), and the City of LaFayette Fire Department all responded to the fire at the OBM Property.

23.    The fire at the OBM Property building was not fully extinguished until November 18, 2015, and during the firefighting efforts, a large volume of firefighting water was sprayed onto the Property and the water began running off the Property into the adjacent Chattooga River.  To prevent further impacts to the River, large volumes of the firefighting water were detained and stored on-site in concrete vaults beneath the OBM Property building, in earthen berms created on the Property during the response, and some of the firefighting water runoff was transported by Global to a concrete vault at an industrial property owned by Crutchfield Properties and leased by Ashgan located at 9146 South Highway 341, Chickamagua, Georgia 30707 (the "Archer Property").

24.    A substantial portion of the firefighting water running out of the OBM Property building was blue in color  and in Global's post-fire information submittal

to U.S. EPA pursuant to § 104(e) of CERCLA, Global indicated that Mohawk's liquid latex for which Mohawk had paid Global "for transportation and disposal" at the OBM Property was "white, blue or black in color."

25.    Due to concerns about the firefighting water being impacted by the substances in the portion of the building leased by Ashgan, the EPA sampled and analyzed the firefighting water runoff stored in the earthen berms at the OBM Property and detected the presence of hazardous substances including VOCs, semivolatile organic compounds ("SVOCs"), and heavy metals such as arsenic, chromium, and selenium in the runoff water.

26.    The general partner of Crutchfield Properties is Drennon Crutchfield, Sr., and during the response to the November 14th fire, John Ashworth of Ashgan and Global represented to Mr. Crutchfield that, in light of Global's expertise as an environmental remediation and response consultant, Global would conduct the emergency response and cleanup of the OBM Property with Ashgan paying 50% of the costs as the tenant-operator at the OBM Property and Crutchfield Properties paying 50% as the owner of the Property.

27.    Mr. Crutchfield accepted John Ashworth's offer, and on November 20, 2015, Crutchfield Properties, Ashgan, and Global entered into a short, written "Agreement for the Emergency Response and Cleanup of 421 [sic] McClemore St

Lafayette, GA."  A true and correct copy of the Agreement is attached hereto as Exhibit "B" and hereinafter referred to as the "November 2015 Cleanup Agreement."

28.    For approximately six months after the November 14th fire, Crutchfield Properties relied on John Ashworth and Global to engage with U.S. EPA regarding sampling, investigation, and planning for response to the release and cleanup of hazardous substances at the OBM Property, and Crutchfield Properties paid invoices submitted by Global relating to such activities.

29.    During this time period, U.S. EPA submitted drafts of an Administrative Order on Consent ("AOC") to Crutchfield Properties, Global, and Ashgan, and Crutchfield Properties believed that it and Ashgan would enter into the AOC in accordance with their November 2015 Cleanup Agreement and Crutchfield Properties' status as owner of the OBM Property and Ashgan's status as the tenant-operator of the OBM Property.

30.    However, unbeknownst to Crutchfield Properties, Mr. Ashworth and Global were not representing the interests of Crutchfield Properties in negotiating a response, cleanup and removal action plan with the U.S. EPA.  Rather, Mr. Ashworth and Ashgan had retained an attorney to argue to EPA that Ashgan had

no responsibility for environmental response and cleanup at the OBM Property and that Crutchfield Properties was solely responsible as the owner of the Property.

31.     When Crutchfield Properties learned of the double-dealing by John Ashworth, Global, and Ashgan, Crutchfield Properties retained an attorney and a reputable environmental consulting firm, Geosyntec Consultants, in May 2016 to enter into negotiations with EPA regarding the response to the release of hazardous substances at the OBM Property.

32.     During the next few months, U.S. EPA continued to sends drafts of an AOC to Crutchfield Properties and Ashgan and EPA indicated that, if an AOC was not entered into, EPA intended to directly undertake the environmental cleanup of the OBM Property.

33.     Despite its clear status as tenant-operator of the OBM Property and despite written demands from U.S. EPA identifying Ashgan as a liable party under CERCLA, Ashgan refused to enter into any AOC.    Therefore, Crutchfield Properties as the current owner of the OBM Property and the "owner" liability imputed to it under § 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), had little choice but to enter into an AOC with U.S. EPA.

34.     In   August   2016,   Crutchfield   Properties   entered   into   an "Administrative Settlement Agreement and Order on Consent for Removal Action"

11

with U.S. EPA (the "August 2016 AOC"), which U.S. EPA provided to Georgia EPD as part of the Georgia EPD's role in the corrective action at the OBM Property.

35.     Pursuant to the August 2016 AOC, Crutchfield Properties has incurred significant response costs in substantially completing the removal/corrective action and environmental cleanup relating to the OBM Property which resulted from the November 14, 2015 fire.

36.     Such cleanup included (i) the removal and disposal at an approved landfill of approximately 6,700 tons of fire debris and solid waste from the OBM Property; (ii) the removal, treatment and disposal of over 107,000 gallons of firefighting runoff water and other impacted water from the OBM Property; and (iii) the removal, treatment, and disposal of approximately 110,000 gallons of firefighting runoff water which Global had transported to and stored at the Archer Property.  To date, the total response costs for the environmental cleanup and removal action incurred by Crutchfield Properties is $1,519,872.97 and Crutchfield Properties hereby demands payment of such amount from Defendants pursuant to 42 U.S.C. § 9607(a).  Crutchfield Properties' response costs continue to increase.

37.     Defendants are the cause of response costs resulting from the November 14, 2015 fire at the OBM Property, are responsible for such costs under

CERCLA and state law, and with the removal action now substantially complete, Crutchfield Properties brings this action to recover its costs and other damages from the Defendants.

## CERCLA AND ITS APPLICABILITY TO THE OBM PROPERTY

38.     CERCLA was enacted in 1980 and is a strict liability statute designed to ensure the timely cleanup of facilities at which hazardous substances have been released and to ensure that the costs of such response efforts are borne by certain "covered persons" deemed responsible parties under the statute.

39.     "Facility" is defined in CERCLA § 101(9) as "any building, structure, installation, equipment, pipe or pipeline" or "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located…."  42 U.S.C. § 9601(9).

40.     "Hazardous substance" is defined in CERCLA § 101(14) by reference to other federal statutes and by reference to a list of substances published by EPA at 40 C.F.R. § 302.4, 42 U.S.C. § 9601(14).

41.     The term "owner or operator" is defined in CERCLA § 101(20) as "in the case of an onshore facility …, any person owning or operating such facility…." 42 U.S.C. § 9601(20).

42.     "Person" is defined in CERCLA § 101(21) as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body."  42 U.S.C. § 9601(20).

43.     "Release" is defined in CERCLA § 101(22) as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)…." 42 U.S.C. § 9601(22).

44.     "Response" is defined in CERCLA § 101(25), and includes "removal" actions, "remedial" actions and enforcement activities related thereto.  42 U.S.C. § 9601(25).

45.     The OMB is a "facility" within the meaning of § 101(9) of CERCLA, 42 U.S.C. § 9601(9).

46.     There has been a "release" and/or a threatened "release" or "hazardous substances" at the OMB Property which has caused the incurrence of "response costs" by Crutchfield Properties, within the meanings of §§ 101(22), 101(14) and 107 of CERCLA, 42 U.S.C. §§ 9601(22), 9601(14) and 9607.

47.    Each of the Defendants is a "person" within the meaning of § 101(21) of CERCLA, 42 U.S.C. § 9601(21).

48.    Ashgan and Global were operators of the southern portion of the OBM Property at a time when hazardous substances were stored, disposed of, and released at the OBM Property, within the meaning of CERCLA, 42 U.S.C. § 9607(a)(2).

49.    As a result of their actual control over, participation in, and/or personal and intimate involvement in the operations of Ashgan and/or Global at the OBM Property including but not limited to storage and disposal activities, Defendants John Ashworth, Betty Ashworth, John Morgan, and Nathaniel Bennett were operators of the southern portion of the OBM Property at a time when hazardous substances were stored, disposed of, and released at the OBM Property within the meaning of CERCLA, 42 U.S.C. § 9607(a)(2).

50.    Mohawk is an arranger and "generator" of hazardous substances which were stored, disposed of, and released at the OBM Property within the meaning of CERCLA, 42 U.S.C. § 9607(a)(3).

51.    HCF is an arranger and "generator" of hazardous substances which were stored, disposed of, and released at the OBM Property within the meaning of CERCLA, 42 U.S.C. § 9607(a)(3).

52.     Global is a transporter of hazardous substances who selected the OBM Property for storage and disposal of such substances within the meaning of CERCLA, 42 U.S.C. § 9607(a)(3).

53.     As a result of the release and threatened release of hazardous substances at or from the OBM Property, Crutchfield Properties has incurred response costs and will continue to incur costs of "response" as that term is defined by § 101(25) of CERCLA, 42 U.S.C. § 9601(25).

54.     The response costs incurred by Crutchfield Properties in connection with the OBM Property and Archer Property were coordinated with, approved by, and compelled by the U.S. EPA and are consistent with the NCP.

## COUNT I: CONTRIBUTION UNDER CERCLA

### (*Against All Defendants*)

55.     The allegations set forth in paragraphs 13-25 and 28-54 above are realleged and fully incorporated herein by this reference.

56.     Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), provides, in relevant part, that:

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement….

16

57.     Crutchfield Properties has resolved its liability to EPA for matters covered in the August 2016 AOC.

58.     As explained and alleged above, all Defendants are liable parties under CERCLA, but have not resolved their liability to Crutchfield Properties.

59.     Crutchfield Properties has been compelled to incur and/or otherwise pay response costs at the OBM Property pursuant to the August 2016 AOC. Crutchfield Properties hereby demands payment of its response costs from Defendants pursuant to 42 U.S.C. § 9607(a).

60.     Crutchfield Properties is entitled to contribution from all Defendants under § 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), for Defendants' respective equitable shares of all response costs incurred by Crutchfield Properties, including applicable interest as provided for in § 107(a) of CERCLA, 42 U.S.C. § 9607(a).

## COUNT II: COST RECOVERY UNDER CERCLA

*(Against All Defendants)*

61.     The allegations set forth in paragraphs 13-25 and 28-54 above are realleged and fully incorporated herein by this reference.

62.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides for private party cost recovery actions and imposes strict, joint and several liability on

responsible parties under CERCLA including the current owner or operator of a facility, any person who operated a facility at the time of disposal of a hazardous substance, any person who arranged for disposal of hazardous substances at a facility, and any person who accepted a hazardous substance for transport to a facility from which there is a release or threatened release.

63.    As set forth more particularly above, each of the Defendants is a responsible party under § 107(a) of CERCLA, 42 U.S.C. § 9607(a).

64.    Pursuant to CERCLA, 42 U.S.C. § 9607, each Defendant is strictly, jointly and severally liable to Crutchfield Properties for the voluntary past and future response costs incurred and to be incurred by Crutchfield Properties in response to the release or threatened release of hazardous substances at and from the OBM Property.

## COUNT III: DECLARATORY RELIEF UNDER CERCLA

### (*Against All Defendants*)

65.    The allegations set forth in paragraphs 13-25 and 28-54 above are realleged and fully incorporated herein by this reference.

66.    There is a present and actual controversy between Crutchfield Properties and all Defendants concerning their respective rights and obligations

with respect to the removal action response costs associated with the OBM Property.

67.     Crutchfield Properties seeks a declaratory judgment under § 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), against all Defendants holding them liable for their respective equitable shares of response costs, which will be binding in any subsequent action to recover further response costs.

## COUNT IV: GEORGIA HAZARDOUS SITE RESPONSE ACT

*(Against All Defendants)*

68.     The allegations set forth in paragraphs 13-25 and 34-37 above are realleged and fully incorporated herein by this reference.

69.     The Georgia Hazardous Site Response Act provides in relevant part that "[d]uring or following the undertaking of any corrective action, any person may seek contribution from any other person who has contributed or is contributing to any release of a hazardous waste, a hazardous constituent, or a hazardous substance." O.C.G.A. § 12-8-96.1(e).

70.     As set forth more particularly above, each of the Defendants have contributed to the release of hazardous constituents and/or hazardous substances at the OBM Property.

71.     As set forth more particularly above, Crutchfield Properties has undertaken corrective action in response to the releases at the OBM Property.

72.     Pursuant to O.C.G.A. § 12-8-96.1(e), Defendants are liable to Crutchfield Properties for contribution for those past, present and future damages arising out of the corrective action efforts set forth above.

## COUNT V: NEGLIGENCE

(*Against Defendants Ashgan, Global, Mohawk and HCF*)

73.     The allegations set forth in paragraphs 13-25 above are realleged and fully incorporated herein by this reference.

74.     Ashgan and Global owed Crutchfield Properties a duty to exercise reasonable care in regard to the storage and disposal of substances in the southern portion of the OBM Property building leased by Ashgan.

75.     Ashgan and Global breached the aforesaid duty by, among other things, storing the substances in such a manner that they resulted in the November 14, 2015 fire which consumed the southern portion of the OBM Property building and caused the release of hazardous substances.

76.     Mohawk and HCF owed Crutchfield Properties a duty to exercise reasonable care in their arrangement for placement, storage, and disposal of Mohawk's and HCF's hazardous substances.

77.     Mohawk and HCF breached the aforesaid duty by arranging for Global and Ashgan to place, store, and dispose of Mohawk's and HCF's hazardous substances at the OBM Property.

78.     As a direct and proximate result of the negligence of Ashgan, Global, Mohawk, and HCF, Crutchfield Properties has been damaged in an amount to be proved at trial.  Such damages include, without limitation, (i) all costs incurred and to be incurred by Crutchfield Properties in response to the November 14, 2015 fire and in the cleanup of the OBM Property, (ii) the diminution in value of the OBM Property and the total loss of the southern portion of the building on the Property, and (iii) the loss of rental payments for the southern portion of the building.

## COUNT VI: BREACH OF LEASE

### (*Against Defendant Ashgan*)

79.     The allegations set forth in paragraphs 13-25 above are realleged and fully incorporated herein by this reference.

80.     The OBM Property Lease between Crutchfield Properties and Ashgan contains an indemnity provision which provides that Ashgan "agrees to indemnify, hold harmless, and defend Landlord from and against any and all losses, claims, liabilities, and expenses, including reasonable attorney fees, if any, which Landlord

may suffer or incur in connection [Ashgan]'s possession, use or misuse of the Premises, except Landlord's act or negligence." (Ex. A at p. 3).

81.     Ashgan breached the OBM Property Lease by, among other things, failing to indemnify Crutchfield Properties for all losses, claims, liabilities and expenses, including reasonable attorney fees, which Crutchfield Properties has incurred as a result of Ashgan's possession, use and/or misuse of the OBM Property and the resulting November 14, 2015 fire at the Property.

82.     As a direct and proximate result of Ashgan's breach of the OBM Property Lease, Crutchfield Properties has been damaged in an amount to be proved at trial.  Such damages include, without limitation, (i) all costs incurred and to be incurred by Crutchfield Properties in response to the November 14, 2015 fire and in the cleanup of the OBM Property, (ii) the diminution in value of the OBM Property and the total loss of the southern portion of the building on the Property, (iii) the loss of rental payments for the southern portion of the building, and (iv) reasonable attorney fees and expenses of litigation.

## COUNT VII: BREACH OF NOVEMBER 2015 CLEANUP AGREEMENT

(*Against Defendant Ashgan*)

83.     The allegations set forth in paragraphs 13-31 above are realleged and fully incorporated herein by this reference.

84.     The November 2015 Cleanup Agreement between Ashgan and Crutchfield Properties required Ashgan to pay for fifty percent of the emergency response and cleanup of the OBM Property.  (Ex. B hereto).

85.     Ashgan breached the November 2015 Cleanup Agreement by, among other things, refusing and failing to pay for fifty percent of the emergency response and cleanup of the OBM Property.

86.     As a direct and proximate result of Ashgan's breach of the November 2015 Cleanup Agreement, Crutchfield Properties has been damaged in an amount to be proved at trial.  Such damages include, without limitation, fifty percent of all costs incurred and to be incurred by Crutchfield Properties in response to the November 14, 2015 fire and in the cleanup of the OBM Property.

## COUNT VIII: EXPENSES OF LITIGATION (O.C.G.A. § 13-6-11)

*(Against All Defendants)*

87.     The allegations set forth in paragraphs 13-37 above are realleged and fully incorporated herein by this reference.

88.     The actions of Defendants were undertaken in bad faith, were stubbornly litigious, and/or have caused Crutchfield Properties unnecessary trouble and expense.

89.     Accordingly, pursuant to O.C.G.A. § 13-6-11, Crutchfield Properties is entitled to an award of its expenses of litigation, including its attorney's fees.

## COUNT IX: PUNITIVE DAMAGES

(*Against Defendants Ashgan and Global*)

90.     The allegations set forth in paragraphs 13-37 above are realleged and fully incorporated herein by this reference.

91.     Ashgan and Global have acted willfully and with an entire want of care which would raise the presumption of conscious indifference to consequences.

92.     Crutchfield Properties should recover punitive and exemplary damages in an amount sufficient to deter such future wrongful conduct by Ashgan and Global.

## PRAYER FOR RELIEF

WHEREFORE, having fully plead its claims, Plaintiff Crutchfield Properties, LLLP, respectfully requests the following relief:

(a)     A trial by jury on all issues so triable;

(b)     On Count I of its Complaint, judgment in its favor against Defendants finding that they are each liable under § 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), and are obligated to pay for their equitable

shares of all past and future response costs, plus interest, incurred pursuant to the August 2016 AOC;

(c)     On Count II of its Complaint, judgment in its favor and against Defendants under § 107(a) of CERCLA, 42 U.S.C. § 9607(a) holding that each Defendant is strictly, jointly and severally liable for the voluntary response costs incurred or to be incurred by Crutchfield Properties, plus interest, in connection with the release and/or threatened release of hazardous substances at the OBM Property;

(d)     On Count III of its Complaint, a declaratory judgment against all Defendants finding that they are each liable under CERCLA and are obligated to pay for their equitable shares of all future response costs associated with the OBM Property;

(e)     On Count IV of its Complaint, judgment in its favor and against Defendants for all of Crutchfield Properties' past, present, and future damages arising of the corrective action at the OBM Property;

(f)     On Count V of its Complaint, judgment in its favor and against Defendants Ashgan and Global in an amount to be proved at trial;

(g)     On Counts VI and VII of its Complaint, judgment in its favor and against Defendant Ashgan in an amount to be proved at trial;

(h)     On Count VIII of its Complaint, An award of expenses of litigation, including attorney's fees, under O.C.G.A. § 13-6-11 against all Defendants;

(i)     An award of punitive and exemplary damages against Ashgan and Global sufficient to deter them from further similar wrongful conduct;

(j)     Prejudgment and postjudgment interest at the maximum rate provided by law;

(k)     That the costs of this action be awarded to Crutchfield Properties; and

(l)     Such other and further relief as the Court may deem appropriate.

This 15th day of May, 2017.

                                        SMITH, GAMBRELL & RUSSELL,
                                        LLP

                                        /s/ Andrew M. Thompson
                                        Andrew M. Thompson
Suite 3100, Promenade II                Georgia Bar No. 707319
1230 Peachtree Street, N.E.             Edward A. Ezekiel
Atlanta, Georgia 30309-3592             Georgia Bar No. 512023
(404) 815-3701 – Telephone
(404) 685-7001 – Facsimile              Counsel for Plaintiff
athompson@sgrlaw.com                    Crutchfield Properties, LLLP

# **EXHIBIT A**



## *REAL ESTATE LEASE*

This Lease Agreement (this "Lease") is dated November 15, 2013, by and between CRUTCHFIELD PROPERTIES LLLP ("Landlord"), and ~~THE RING GROUP, LLC~~ ("Tenant"). The parties agree as follows:    Ashgandus Partners LLC

**PREMISES.** Landlord, in consideration of the lease payments provided in this Lease, leases to Tenant WAREHOUSE SPACE AS IS (the "Premises") located at 412 McLEMORE STREET, LAFAYETTE, GA 30728.

**TERM.** The lease term will begin on November 15, 2013 and will terminate on May 15, 2014.

**LEASE PAYMENTS.** Tenant shall pay to Landlord monthly installments of $3,000.00, payable in advance on the FIFTEENTH day of each month, for a total lease payment of $18,000.00. Lease payments shall be made to the Landlord at P.O. BOX 745, DALTON, GA 30722-0745, which address may be changed from time to time by the Landlord.

**POSSESSION.** Tenant shall be entitled to possession on the first day of the term of this Lease, and shall yield possession to Landlord on the last day of the term of this Lease, unless otherwise agreed by both parties in writing. At the expiration of the term, Tenant shall remove its goods and effects and peaceably yield up the Premises to Landlord in as good a condition as when delivered to Tenant, ordinary wear and tear excepted.

**USE OF PREMISES.** Tenant may use the Premises only for COMMERCIAL WAREHOUSING AND/OR MANUFACTURING. The Premises may be used for any other purpose only with the prior written consent of Landlord, which shall not be unreasonably withheld. Tenant shall notify Landlord of any anticipated extended absence from the Premises not later than the first day of the extended absence.

**PROPERTY INSURANCE.** Landlord and Tenant shall each maintain appropriate insurance for their respective interests in the Premises and property located on the Premises. Landlord shall be named as an additional insured in such policies. Tenant shall deliver appropriate evidence to Landlord as proof that adequate insurance is in force issued by companies reasonably satisfactory to Landlord. Landlord shall receive advance written notice from the insurer prior to any termination of such insurance policies. Tenant shall also maintain any other insurance which Landlord may reasonably require for the protection of Landlord's interest in the Premises. Tenant is responsible for maintaining casualty insurance on its own property.

**LIABILITY INSURANCE.** Tenant shall maintain liability insurance on the Premises in a total aggregate sum of at least $2,000,000.00. Tenant shall deliver appropriate evidence to Landlord

as proof that adequate insurance is in force issued by companies reasonably satisfactory to Landlord. Landlord shall receive advance written notice from the insurer prior to any termination of such insurance policies.

**UTILITIES AND SERVICES.** Tenant shall be responsible for all utilities and services incurred in connection with the Premises.

**TAXES.** Taxes attributable to the Premises or the use of the Premises shall be allocated as follows:

> **REAL ESTATE TAXES.** Landlord shall pay all real estate taxes and assessments for the Premises.

> **PERSONAL TAXES.** Tenant shall pay all personal taxes and any other charges which may be levied against the Premises and which are attributable to Tenant's use of the Premises, along with all sales and/or use taxes (if any) that may be due in connection with lease payments.

**TERMINATION UPON SALE OF PREMISES.** Notwithstanding any other provision of this Lease, Landlord may terminate this lease upon 60 days' written notice to Tenant that the Premises have been sold.

**DEFAULTS.** Tenant shall be in default of this Lease if Tenant fails to fulfill any lease obligation or term by which Tenant is bound. Subject to any governing provisions of law to the contrary, if Tenant fails to cure any financial obligation within 5 days (or any other obligation within 10 days) after written notice of such default is provided by Landlord to Tenant, Landlord may take possession of the Premises without further notice (to the extent permitted by law), and without prejudicing Landlord's rights to damages. In the alternative, Landlord may elect to cure any default and the cost of such action shall be added to Tenant's financial obligations under this Lease. Tenant shall pay all costs, damages, and expenses (including reasonable attorney fees and expenses) suffered by Landlord by reason of Tenant's defaults. All sums of money or charges required to be paid by Tenant under this Lease shall be additional rent, whether or not such sums or charges are designated as "additional rent". The rights provided by this paragraph are cumulative in nature and are in addition to any other rights afforded by law.

**LATE PAYMENTS.** For each payment that is not paid within 5 days after its due date, Tenant shall pay a late fee equal to 10.00 % of the required payment.

**HOLDOVER.** If Tenant maintains possession of the Premises for any period after the termination of this Lease ("Holdover Period"), Tenant shall pay to Landlord lease payment(s) during the Holdover Period at a rate equal to 150 % of the most recent rate preceding the Holdover Period. Such holdover shall constitute a month-to-month extension of this Lease.

**CUMULATIVE RIGHTS.** The rights of the parties under this Lease are cumulative, and shall not be construed as exclusive unless otherwise required by law.

**NON-SUFFICIENT FUNDS.** Tenant shall be charged $40.00 for each check that is returned to Landlord for lack of sufficient funds.

**REMODELING OR STRUCTURAL IMPROVEMENTS.** Tenant shall have the obligation to conduct any construction or remodeling (at Tenant's expense) that may be required to use the Premises as specified above. Tenant may also construct such fixtures on the Premises (at Tenant's expense) that appropriately facilitate its use for such purposes. Such construction shall be undertaken and such fixtures may be erected only with the prior written consent of the Landlord which shall not be unreasonably withheld. Tenant shall not install awnings or advertisements on any part of the Premises without Landlord's prior written consent. At the end of the lease term, Tenant shall be entitled to remove (or at the request of Landlord shall remove) such fixtures, and shall restore the Premises to substantially the same condition of the Premises at the commencement of this Lease.

**ACCESS BY LANDLORD TO PREMISES.** Subject to Tenant's consent (which shall not be unreasonably withheld), Landlord shall have the right to enter the Premises to make inspections, provide necessary services, or show the unit to prospective buyers, mortgagees, tenants or workers. However, Landlord does not assume any liability for the care or supervision of the Premises. As provided by law, in the case of an emergency, Landlord may enter the Premises without Tenant's consent. During the last three months of this Lease, or any extension of this Lease, Landlord shall be allowed to display the usual "To Let" signs and show the Premises to prospective tenants.

**INDEMNITY REGARDING USE OF PREMISES.** To the extent permitted by law, Tenant agrees to indemnify, hold harmless, and defend Landlord from and against any and all losses, claims, liabilities, and expenses, including reasonable attorney fees, if any, which Landlord may suffer or incur in connection with Tenant's possession, use or misuse of the Premises, except Landlord's act or negligence.

**DANGEROUS MATERIALS.** Tenant shall not keep or have on the Premises any article or thing of a dangerous, flammable, or explosive character that might substantially increase the danger of fire on the Premises, or that might be considered hazardous by a responsible insurance company, unless the prior written consent of Landlord is obtained and proof of adequate insurance protection is provided by Tenant to Landlord.

**COMPLIANCE WITH REGULATIONS.** Tenant shall promptly comply with all laws, ordinances, requirements and regulations of the federal, state, county, municipal and other authorities, and the fire insurance underwriters. However, Tenant shall not by this provision be required to make alterations to the exterior of the building or alterations of a structural nature.

- 3 -

**MECHANICS LIENS.** Neither the Tenant nor anyone claiming through the Tenant shall have the right to file mechanics liens or any other kind of lien on the Premises and the filing of this Lease constitutes notice that such liens are invalid. Further, Tenant agrees to (1) give actual advance notice to any contractors, subcontractors or suppliers of goods, labor, or services that such liens will not be valid, and (2) take whatever additional steps that are necessary in order to keep the premises free of all liens resulting from construction done by or for the Tenant.

**ARBITRATION.** Any controversy or claim relating to this contract, including the construction or application of this contract, will be settled by binding arbitration under the rules of the American Arbitration Association, and any judgment granted by the arbitrator(s) may be enforced in any court of proper jurisdiction.

**SUBORDINATION OF LEASE.** This Lease is subordinate to any mortgage that now exists, or may be given later by Landlord, with respect to the Premises.

**ASSIGNABILITY/SUBLETTING.** Tenant may not assign or sublease any interest in the Premises, nor effect a change in the majority ownership of the Tenant (from the ownership existing at the inception of this lease), nor assign, mortgage or pledge this Lease, without the prior written consent of Landlord, which shall not be unreasonably withheld.

**NOTICE.** Notices under this Lease shall not be deemed valid unless given or served in writing and forwarded by mail, postage prepaid, addressed as follows:

**LANDLORD:**

CRUTCHFIELD PROPERTIES LLLP
P.O. BOX 745
DALTON, Georgia  30722-0745
58 - 2580051
**TENANT:**

~~THE RING GROUP, LLC~~ Ashgarde Producers LLC
3~~17 SYLVAN STREET~~ 306 Workman Rd
CHATTANOOGA, TN ~~37405~~ 37410
FEI #

Such addresses may be changed from time to time by either party by providing notice as set forth above. Notices mailed in accordance with the above provisions shall be deemed received on the third day after posting.

**GOVERNING LAW.** This Lease shall be construed in accordance with the laws of the State of Georgia.

- 4 -

**ENTIRE AGREEMENT/AMENDMENT.** This Lease Agreement contains the entire agreement of the parties and there are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Lease. This Lease may be modified or amended in writing, if the writing is signed by the party obligated under the amendment.

**SEVERABILITY.** If any portion of this Lease shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Lease is invalid or unenforceable, but that by limiting such provision, it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**WAIVER.** The failure of either party to enforce any provisions of this Lease shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Lease.

**BINDING EFFECT.** The provisions of this Lease shall be binding upon and inure to the benefit of both parties and their respective legal representatives, successors and assigns.

**LANDLORD:**
**CRUTCHFIELD PROPERTIES LLLP**


By: _____          Date: November 15, 2013
DRENNON CRUTCHFIELD SR.,
GENERAL PARTNER


**TENANT:**
~~THE RING GROUP, LLC~~
Ashgandos Pro LLC

By: _____          Date: November 15, 2013
JOHN ASHWORTH,
_____

**EXHIBIT A**

**THE RING GROUP, LLC**

1. TENANT SHALL GIVE A 60 DAY NOTICE OF VACATING THE PREMISES, OR TO RENEW THE LEASE.

2. TENANT IS RESPONSIBLE FOR ALL UTILITIES FOR HIS SPACE, AND FOR ANY ELECTRICAL WORK THAT IS NECESSARY FOR HIS WORK.

3. TENANT IS RESPONSIBLE FOR KEEPING HIS SPACE NEAT AND CLEAN, FREE OF DEBRIS.

4. TENANT SHALL SUPPLY LANDLORD PROOF OF INSURANCE UPON OCCUPYING THE BUILDING.

DRENNON CRUTCHFIELD SR.
CRUTCHFIELD PROPERTIES LLLP

JOHN ASHWORTH
THE RING GROUP, LLC.
Ashgandus Products LLC

# **EXHIBIT B**

**CHATTANOOGA**
*306 Worlanan Road*
*Chattanooga, TN 37410*
*423-581-4580 – Voice*
*423-531-4579 - Fax*



**GLOBAL**
**ENVIRONMENTAL**

Agreement for the Emergency Response and Cleanup of 421 McClemore St
Lafayette, GA

Ashgan Products, LLC and Crutchfield Properties, LLLP agree to contract with
Global Environmental for the Emergency Response as well as the remediation and
demolition of facility listed above. Global Environmental will bill each company
equally for services provided at 50% each.

Nate Bennett
Ashgan Products, LLC

Drennon Crutchfield
Crutchfield Properties, LLLP

John Ashworth
Global Environmental

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| CRUTCHFIELD PROPERTIES, LLLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File No. |
| | ) | 4:17-CV-00076-HLM |
| ASHGAN PRODUCTS LLC, GLOBAL | ) | |
| ENVIROTECH, LLC, MOHAWK INDUSTRIES, | ) | |
| INC., HEALTHIER CHOICE FLOORING, LLC, | ) | |
| JOHN ASHWORTH, BETTY ASHWORTH, | ) | |
| JOHN F. MORGAN and NATHANIEL | ) | |
| BENNETT, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have served all parties with the within and foregoing

FIRST AMENDED COMPLAINT on the date shown below on each Defendant by

United States mail, postage prepaid, and addressed as follows:

Ashgan Products LLC
c/o John F. Morgan, Registered Agent
904 W. Dug Gap Mountain Rd.
Dalton, GA  30720

Global Envirotech, LLC
c/o Betty Ashworth, Registered Agent
80 U.S. Grant
Ringgold, GA  30736

Betty Ashworth
436 Baker Lane
Whitwell, TN  37397

John Ashworth
436 Baker Lane
Whitwell, TN  37397

John F. Morgan
904 W. Dug Gap Mountain Rd.
Dalton, GA  30720

Nathaniel Bennett
54 Misty Ridge Lane
Ringgold, GA 30736

Healthier Choice Flooring, LLC
c/o Craig Poteet, Registered Agent
401 Jones Street
Dalton, GA  30720

Mohawk Industries, Inc.
c/o Corporation Service Company, as
Registered Agent
40 Technology Parkway South #300
Norcross, GA  30092

William J. Sheppard, Esq.
James-Bates-Brannan-Groover LLP
3399 Peachtree Rd NE, Suite 1700
Atlanta, GA 30326

This 15th day of May, 2017.

_/s/ Andrew M. Thompson_
Counsel for Plaintiff
Crutchfield Properties, LLLP

2